

**United States Department of Justice**

*United States Attorney*
*District of Connecticut*

*450 Main Street*          *(860) 947-1101*
*Room 328*                 *Fax (860) 760-7979*
*Hartford, Connecticut  06103*   *www.justice.gov/usao/ct*

December 19, 2019

Robert C. Mirto, Esq.
295 Main Street
West Haven, Connecticut 06516

Re:   United States v. Paul Fitzgerald Williams
      Crim. No. 3:19CR117 (JCH)

Dear Mr. Mirto:

This letter confirms the plea agreement entered into between your client, Paul Fitzgerald Williams (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal case.

**The Plea and Offense**

The defendant agrees to plead guilty to Count One of an indictment charging him with Reentry of a Removed Alien, in violation of Title 8, United States Code, Sections 1326(a) and (b)(2). He understands that to be guilty of the reentry offense, the following essential elements of the offenses must be satisfied:

1. That the defendant was an alien who had been previously removed from the United States;

2. That subsequent to his removal, the defendant was found in the United States; and

3. That the defendant had not sought or obtained the permission of the Attorney General or his successor, the Secretary of the Department of Homeland Security, for re-application for admission to the United States since the time of the defendant's previous removal, as is required by law.

**The Penalties**

### Imprisonment

This offense carries a maximum penalty of two (2) years of imprisonment. The maximum penalty increases pursuant to 8 U.S.C. § 1326(b)(2), to twenty (20) years of imprisonment based on the defendant's conviction for an aggravated felony, to wit: his December 14, 2000 conviction in the District of Connecticut for distribution of 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), where he was sentenced to 71 months of imprisonment followed by three (3) years of supervised release.

### Supervised Release

In addition, the Court may impose a term of supervised release of three (3) years following any term of imprisonment. 18 U.S.C. § 3583(b)(3).

The defendant understands that, should he violate any condition of the supervised release, he may be required to serve a further term of imprisonment of up to two (2) years with no credit for time already spent on supervised release. 18 U.S.C. § 3583(e)(3).

### Fine

This offense carries a maximum fine of $250,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) the amount specified in the section defining the offense, which is $250,000.

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on the count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court. The defendant agrees to pay the special assessment on or before the date of sentencing unless he establishes an inability to pay on or before the date of sentencing through the financial disclosure to the Probation Office as part of the presentence investigation and report, in which case the defendant agrees to pay the special assessment as soon as practicable.

### Interest, Penalties and Fines

Unless otherwise ordered, should the Court impose a fine of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine pursuant to 18 U.S.C. § 3572(h), (i) and § 3612(g).

## Sentencing Guidelines

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two (2) levels the defendant's adjusted offense level under Section 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1 (a) and his offense level is determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1 (b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one (1) additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reduction.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Sentencing Guideline § 1B1.3; and (2) truthfully disclosing to the Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his plea of guilty or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands

that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make the recommendation or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not purport to set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant expressly understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Sentencing Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range absent ex post facto considerations.

Pursuant to U.S.S.G. § 2L1.2 (a), the base offense level for the reentry offense is eight (8). Four (4) levels are added pursuant to U.S.S.G. §2L1.2(b)(1)(A) as the defendant committed the instant offense after sustaining a conviction for a felony that is a reentry offense. Ten (10) levels are added pursuant to U.S.S.G. § 2L1.2(b)(3)(A) because after the defendant was ordered deported or removed from the United States for the first time, the defendant engaged in criminal conduct, to wit: a December 5, 2000 conviction in the District of Connecticut for distribution of 5 or more grams of cocaine base, that resulted in a sentence of five years or more. Three (3) levels are subtracted for acceptance of responsibility, as noted above, resulting in a total adjusted offense level of 19.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category V. The parties reserve their right to recalculate the defendant's Criminal History Category and corresponding sentencing range if this initial assessment proves inaccurate. The parties also reserve the right to contest the Probation Office's assessment of the defendant's criminal history.

An adjusted offense level of 19, assuming a Criminal History Category of V, would result in a range of 57 to 71 months of imprisonment (sentencing table) and a fine range of $10,000 to $100,000, U.S.S.G. § 5E1.2(c)(3). The defendant is subject to a supervised release term of three (3) years for the reentry offense. U.S.S.G. § 5D1.2. It is noted, however, that pursuant to the U.S.S.G. § 5D1.1 (c), the Court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence and both sides reserve their right to object to a departure or non-Guidelines sentence. The defendant expressly understands that the Court is not bound by this agreement on the Guideline range specified above. The defendant further understands that he will not be permitted to withdraw the plea of guilty if the Court imposes a sentence outside any of the ranges or the recommendations set forth in this agreement.

In the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the Government expressly reserves the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

### Information to the Court

The Government expressly reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, it is expressly understood that the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to its file, with the exception of grand jury material.

## Waiver of Rights

### 1. Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, and the right to compulsory process for the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about the offense to which he pleads guilty, and, if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### 2. Waiver of Statute of Limitations

The defendant understands and agrees that should the conviction following the defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the

signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

### 3. Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to appeal his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### 4. Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241 if that sentence does not exceed 71 months of imprisonment, a three (3) year term of supervised release, a $100,000 fine and a $100 special assessment, even if the Court reaches a sentencing range permitting such a sentence by a Guideline analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

### 5. Waiver of Challenge to Plea Based on Immigration Consequences

The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, non-citizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. Indeed, because the defendant is pleading guilty to Reentry of a Removed Alien, removal is presumptively mandatory. Likewise, if the defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization and removal. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the

district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

### Acknowledgment of Guilt and Voluntariness of Plea

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in this case.

### Scope of Agreement

The defendant acknowledges and understands that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from the plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant understands and acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

### Collateral Consequences

The defendant further understands that he will be adjudicated guilty of the offense to which he has pleaded guilty and will thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant

7

understands that pursuant to section 203(b) of the Justice for All Act, the Bureau of Prisons or the Probation Office will collect a DNA sample from the defendant for analysis and indexing. Lastly, the defendant understands that the Government reserves the right to notify any state or federal agency by whom he is licensed, or with whom he does business, as well as his current or future employer of the facts and circumstances of his conviction.

### Satisfaction of Federal Criminal Liability; Breach

The defendant's guilty plea, if accepted by the Court under the terms of this plea agreement, will satisfy any federal criminal liability of the defendant in the District of Connecticut because of his participation in the criminal conduct, which forms the basis of the indictment in this case. He expressly understands and agrees that this agreement does not address any other federal criminal liability he may have in Connecticut or elsewhere.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may deem all or part of this agreement null and void. Should the Government void this agreement, the defendant will not be permitted to withdraw his guilty plea.

**No Other Promises**

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/Natalie M. Freisinger/*

DEBORAH R. SLATER
ASSISTANT UNITED STATES ATTORNEY

The defendant certifies that he has read this plea agreement letter (and any stipulations or attachments) or has had it read or translated to him, that he has had enough time to discuss it with his attorney, that his attorney has answered any questions he had about it, that it sets forth the entire agreement and understanding between him and the Government, and that he fully understands and accepts the terms thereof.

_____     12/19/2019
Paul Fitzgerald Williams       Date
The Defendant

I have read or thoroughly reviewed the plea agreement letter to my client, who advises me that he understands and accepts its terms.

_____     12/19/2019
Robert C. Mirto, Esq.          Date
Counsel for the Defendant

## STIPULATION OF OFFENSE CONDUCT

The defendant, Paul Fitzgerald Williams, and the Government stipulate and agree to the following offense conduct that gives rise to the defendant's agreement to plead guilty to Count One of the indictment:

1. The defendant, Paul Fitzgerald Williams, is a citizen and national of Jamaica who has never held legal status in the United States.

2. Defendant Williams was initially encountered by the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") following his February 15, 1991 arrest and subsequent conviction on April 30, 1993, for sale of a hallucinogen/narcotic in Bristol, Connecticut, and an April 1, 1992 conviction also in Bristol, Connecticut, for carrying a pistol without a permit. Defendant Williams was served with an Order to Show Cause and Notice of Hearing by the Immigration and Naturalization Service based on a belief that he was illegally in the United States. Following a hearing before an Immigration Judge on July 6, 1993, defendant Williams was ordered removed from the United States to Jamaica. The defendant was deported on June 27, 1996, and was advised, in writing, that he could not seek permission to reapply for admission into the United States for a period of twenty (20) years.

3. Defendant Williams was thereafter located within the United States when he was encountered in New Britain, Connecticut on June 15, 1999, while using the name of Anthony Brown, and charged with narcotics offenses that remain pending in the State of Connecticut Superior Court. He was additionally charged on June 15, 1999 by the Connecticut State Police on five other narcotics cases, four under the name of Williams and one under the name of Ray Horton. He was sentenced on February 23, 2000, as it related to a conviction for sale of hallucinogen/narcotics and received a sentence of incarceration of ten (10) years. A second case, under the Horton alias, resulted in defendant Williams' conviction on February 29, 2000, whereby he was sentenced to 62 months of incarceration to run concurrently with the ten year sentence. The remaining three cases were resolved with convictions on April 3, 2000, and defendant Williams was convicted of three counts of illegal sale of drugs and sentenced to five years of incarceration on each case, with the sentences to run concurrent to the February 23, 2000 ten year sentence.

4. Defendant Williams was also convicted on December 12, 2000 in the District of Connecticut of distribution of 5 or more grams of cocaine base and illegal reentry of a removed alien and was sentenced to 100 months of incarceration with four years of supervised release to follow on the narcotics offense and 71 months with three years of supervised release to run concurrently on the reentry offense.

5. Defendant Williams was issued a Notice of Intent to Reinstate His Prior Order of Removal by ICE on June 23, 2004. He was deported from the United States to Jamaica on April 28, 2008. Defendant Williams was also advised, in writing, that he was permanently barred from seeking application for permission to reenter the United States.

6. On February 8, 2019, defendant Williams was arrested by the Hartford, Connecticut

10

Police for interfering/resisting arrest. A biometric match of his fingerprints resulted in his referral to ICE for a determination as to whether he was illegally in the United States.

7. The defendant's identity and prior removals were confirmed through a fingerprint comparison conducted by an expert from the Connecticut State Police forensics laboratory on March 27, 2019.

8. The Department of Homeland Security, Citizenship and Immigration Services confirmed that defendant Williams did not seek and was not granted permission to reapply for admission into the United States.

9. On April 24, 2019, defendant Williams provided a *Mirandized* statement to Immigration and Customs Enforcement officers advising that he had been previously removed from the United States, that did not apply for permission to apply to reenter this country, as required by law, and that he knowingly and willingly reentered the United States.

The written stipulation above is incorporated into the preceding plea agreement. It is understood, however, that the defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.

_____
Paul Fitzgerald Williams
The Defendant

_____
Robert C. Mirto, Esq.
Counsel for the Defendant

_____
Deborah R. Slater
Assistant United States Attorney

11