UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:19CR117(JCH) |
| | : | |
| v. | : | |
| | : | |
| PAUL FITZGERALD WILLIAMS | : | February 28, 2020 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government respectfully submits this Memorandum in support of the March 12, 2020 sentencing of the defendant, Paul Fitzgerald Williams, for the offense of Reentry of a Removed Alien, in violation of 8 U.S.C. § 1326(a) and (b)(2). In this case, the defendant's serious and lengthy criminal history, to include numerous serious drug distribution offenses, supports imposition of a sentence within the correctly calculated Guidelines range of 57 to 71 months of incarceration. A Guideline sentence is a fair and reasonable sentence in light of the sentencing factors articulated in 18 U.S.C. § 3553(a).

**I.     Introduction**

On December 19, 2019, the defendant, a native and citizen of Jamaica, entered a guilty plea to the felony offense of Reentry of a Removed Alien, in violation of 8 U.S.C. § 1326(a) and (b)(2). PSR ¶ 1. As the defendant's deportation was subsequent to his conviction for an aggravated felony, that being a 2000 conviction in this District for distribution of 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), the maximum statutory penalty faced by the defendant is increased from two (2) to twenty (20) years. 18 U.S.C. § 1326(a) and (b)(2), PSR face sheet, ¶¶ 45, 74. Defendant Williams additionally faces a term of supervised release of up to three (3) years, a maximum fine of $250,000, and a $100 mandatory special assessment. PSR face sheet, ¶¶ 77, 82-83.

The final Presentence Report ("PSR") and its Addendum, filed on February 21, 2020, calculates the defendant's base offense level at level eight (8), pursuant to U.S.S.G. § 2L1.2(a). PSR ¶19.  The offense level was increased by four (4) levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A), as defendant Williams committed the instant offense subsequent to the commission of a felony illegal reentry offense.  PSR ¶ 20. An additional ten (10) is levels is additionally added pursuant to U.S.S.G. § 2L1.12(b)(2)(A), because subsequent to his removal from the United States for the first time, the defendant engaged in criminal conduct that resulted in a conviction for a felony offense for which the sentence imposed was five (5) years or more. PSR ¶ 21.  More specifically, on December 5, 2000, defendant Williams was convicted in the District of Connecticut of the felony offense of possession with intent to distribute and distribution of five or more grams of cocaine base and was sentenced to 100 months of imprisonment followed by four years of supervised release.  PSR ¶¶ 21, 45.

Following a three-level reduction for acceptance of responsibility, the adjusted offense level for defendant Williams is 19, and with a criminal history score of 12, resulting in a Criminal History Category of V, the Guideline imprisonment range is 57-71 months.  PSR ¶¶ 29, 48, 75.  The Sentencing Guidelines additionally recommend that the sentence of incarceration be followed by a period of supervised release of one to three years, a fine range from $10,000 to $100,000, and a $100 mandatory special assessment.[1]  PSR ¶¶ 77, 83-84.

---

[1] U.S.S.G. § 5D1.1(c) advises that "the court should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment."  However, Application Note 5 of the same Guideline advises, "The court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstance of a particular case."  U.S.S.G. § 5D1.1 n.5.

**II.     Background**

The defendant, Paul Fitzgerald Williams, a native and citizen of Jamaica, is believed to have been born on July 30, 1965, making him 54 years of age. [2] PSR ¶ 56.  He has never held legal status in the United States.  PSR ¶ 6.

Despite his having contact with law enforcement on four separate occasions between December 1987 and February of 1991, defendant Williams' illegal presence in the United States did not come to the attention of immigration authorities.  PSR ¶ ¶ 34-37.  On these occasions, the defendant was convicted of:

(1) sale of hallucinogens/narcotics in Superior Court in Hartford, Connecticut, with a date of birth of August 1, 1965, where he was sentenced on October 13, 1988 to 5 years' jail, 2 years to serve, 3 years' probation with a revocation of his probation in April 1993 resulting in 30 months in custody;

(2) possession of narcotics with intent to sell, using the name of Ricardo Bone, also in Hartford with a 5-year sentence, suspended after 2 years and 3 years' of probation also imposed on October 13, 1988;

(3) larceny 6th degree and (4) possession of marijuana, occurring in Bristol, Connecticut, using a false date of birth for both offenses, and resulting in a fine imposed in February 1991.

While it is uncertain as to why immigration authorities were not alerted to the defendant's presence on these occasions, it is surmised that databases were not as sophisticated as they are today.  At present, fingerprints are biometrically compared through a computerized system

---

[2] According to criminal history information obtained from prior convictions, defendant Williams has used 17 additional alias identities, 12 known additional dates of birth, and two known social security numbers. This information is outlined in the PSR at page 2.

resulting in notification to the Department of Homeland Security, Immigration and Customs Enforcement (ICE).  Previously, comparisons were made on a manual case-by-case basis, inevitably resulting in missed identifications.  The fact that the defendant used multiple aliases and dates of birth may have also hampered the ability of immigration authorities to identify him.

Immigration authorities did, however, encounter defendant Williams following his arrest in Bristol, Connecticut in February 1991, for sale of hallucinogen/narcotic and his October 1991 arrest in West Hartford, Connecticut for carrying a weapon without a pistol permit.  PSR ¶¶ 7, 38-39.  He was sentenced on April 30, 1993 in Bristol, Connecticut to 90 months of incarceration on the possession charge, with 30 months to serve, consecutive to his April 1, 1992 sentence in West Hartford, Connecticut for 1 year of incarceration, execution suspended and 3 years of probation with a $1,000 fine on the no pistol permit count.   Williams was served with an Order to Show Cause and Notice of Hearing by the Immigration and Naturalization Service based on a belief that he was illegally in this country.  Following a hearing before an Immigration Judge in Boston, Massachusetts on July 6, 1993, defendant Williams was ordered removed from the United States to Jamaica.  PSR ¶ 7.  He was deported on June 27, 1996, and was advised, in writing, that he barred from seeking permission to reapply for admission to the United States for a period of 20 years.    *Id.*

However, only three years later, on June 15, 1999, when he was 33-years old and using the name of Anthony Brown, defendant Williams was identified as having returned to the United States following his arrest in New Britain, Connecticut.  PSR ¶ 8.  He was thereafter convicted in Manchester, Connecticut on February 23, 2000 for the sale of hallucinogen/narcotics and received a sentence of 10 years of incarceration.  PSR ¶ 40. Williams was also charged on the same date with additionally narcotics offenses to include:

(1) three separate cases involving the sale of illegal drugs in Hartford, Connecticut, resulting in current sentences of five years on April 3, 2000;

(2) sale of hallucinogen/narcotics in New Britain, Connecticut, resolved on February 29, 2000 with 62 months concurrent time; and

(3) federal charges in the District of Connecticut to include distribution of five or more grams of cocaine base and unlawful reentry, resulting in 100 months' imprisonment followed by 3 years of supervised release on the drug case and 71 months and 3 years of supervised release on the reentry case, with the sentences to run concurrent to one another and concurrent to the state sentences he was then serving.  PSR ¶¶ 40-45.

These offenses involved the defendant's initial use of aliases to include Anthony Brown and Ray Horton, in addition to his true name and various dates of birth. PSR ¶¶ 8, 40-45.  The federal offense also established that defendant Williams was "cooking" cocaine to turn it into crack cocaine, supplying many local drug dealers with large quantities of crack, and stored large amounts of money in various locations to include a safe house belonging to the mother of his child.  PSR at ¶ 5. Williams also used pagers, cell phones, and rental cars in an effort to avoid detection by law enforcement.  *Id.* When arrested in the federal case, there had been six controlled purchases made in three weeks' time totaling approximately 78 grams of cocaine base, and an additional 110 grams of crack cocaine was seized during a search of the defendant's residence.  *Id.*

On June 23, 2004, while servicing his sentence, defendant Williams was served with a Notice of Intent/Decision to Reinstate the prior order of removal.  PSR ¶ 10.  Upon completion of his state and federal sentences on April 28, 2008, he was removed from the United States to

Jamaica. *Id*. On this occasion, defendant Williams was provided written notification that he was permanently barred from seeking permission to reapply to reenter this country. *Id.*

However, on February 8, 2019, defendant Williams was arrested by Hartford Police officers and charged with interfering/resisting arrest. PSR ¶ 11. He was referred to ICE based on a computerized biometric fingerprint match. *Id.* An expert state fingerprint technician confirmed that the fingerprints taken of the individual who was deported on June 27 1996 and April 28, 2008, were the same as the fingerprints of the person who was arrested in Hartford, Connecticut in February of 2019. PSR ¶ 10. Defendant Williams provided a *Mirandized* statement to ICE stating that he knowingly and intentionally reentered the United States a "couple years ago." PSR ¶ 12.

### III. Discussion

The Government respectfully requests that the Court sentence defendant Williams to a sentence within the correctly calculated Guideline range of 57 to 71 months' imprisonment, followed by a term of supervised release. This sentence is warranted, as the defendant illegally entered and then subsequently illegally reentered the United States on two known occasions. While living in the United States illegally, the defendant has committed a significant number of very serious crimes, to include a total of ten narcotics distribution offenses spanning a period of twelve years, but, if that is not concerning enough, as previously outlined, his convictions also include carrying a pistol without a permit and criminal impersonation. PSR ¶¶ 34-46. It does not appear that the defendant was concerned that his criminal conduct not only fed the addiction of those in the community, but also significantly contributed to the deterioration of the community in which he lived.

Defendant Williams has clearly shown a complete lack of respect for the laws of this country in that he is a criminal alien illegally in the United States who has engaged in despicable criminal conduct while was here. In addition, he was not been deterred from criminal conduct, despite his contacts with law enforcement and his multiple removals from the United States.

The defendant, nonetheless, seeks a significantly below-Guidelines sentence   He seeks to convince this Court to impose a below-Guidelines sentence because of his motive for coming to the United States and because he has not been arrested for narcotics offenses since his illegal return to the United States. However, his request for a significantly below-Guidelines sentence completely is unwarranted in this case. Defendant William's flagrant disregard for immigration law must be acknowledged through the sentence imposed by this Court.

    A.    <u>The Sentencing Guidelines are Correctly Calculated and Properly Utilized</u>

        i.    History and Characteristics of the Defendant

Although he was "raised in the church" in Jamaica by his grandmother, lived in a single family home in a "peaceful area," and had all of his material needs taken care of, defendant Williams elected to pursue a life of crime while illegally in this country, sustaining a total of twelve serious criminal convictions in Connecticut, primarily involving narcotics distribution, over a period of thirteen years. PSR ¶¶ 34-46, 57. He was, by all accounts, a significant and prolific drug dealer in the Hartford area. PSR ¶ 95. By his own admission, he has an extensive history of substance abuse beginning at the age of twelve, using marijuana heavily in addition to crack and powder cocaine, along with the regular consumption of alcohol to the point of intoxication. PSR ¶ 66. Defendant Williams' convictions resulted in his deportation to Jamaica on two occasions and a permanent bar preventing him from seeking application for readmission into this country. PSR ¶ 10.

The defendant has painted an extensive and detailed picture of the difficult circumstances that he encountered when he was most recently deported to Jamaica. He claims to have been the subject of extortion threats from a local gang. Defendant's Memorandum in Aid of Sentencing at 6. While it may be that he was a target of extortion due monies received from what appears to be a lawsuit as well as success in his taxi and car rental businesses, it is also equally plausible that he made enemies during the height of his drug dealing days. It is reasonable to assume that given his prolific illegal activities in the Hartford, Connecticut area over a period of thirteen years from 1987 until the year 2000, defendant Williams acquired drug manufacturing and distribution skills that he may have utilized when he lived in Jamaica both prior to and subsequent to his two removals. We have no information that he was otherwise legally employed prior to his running a taxi and then rental car business following his most recent removal and receipt of funds from a resolved court case around 2009.

It must also be acknowledged that the defendant created his own outcome in this case because he had not been arrested for new criminal offenses, immigration authorities would likely never have detected his presence in this country. He also chose to return to this country illegally, when he could have pursued legal options to enter other countries, lived in other parts of Jamaica, or attempted to gain legal entry to this country through a claim of asylum, although he likely does not meet the requirements for a grant of asylum given that he was not facing political persecution. However, defendant Williams did not pursue any of these legal paths. Instead, he asserts that his reentry offense was more akin to a "trespass" than a serious offense. Defendant's Memorandum at 7. The Government completely disagrees.

To his credit, defendant Williams reports that he has been drug free since entering custody in 1999. In addition, while he never finished high school, leaving at the age of 15 as he wished to learn a trade, he has expressed interest at his current age of 54, in obtaining his GED.

### ii.  The Nature and Circumstances of the Offense

In this case, the defendant's serious criminal conviction and repeated disregard for the finality of removal orders have generated an offense level of 19 and a criminal history category of V.  He illegally entered this country and twice thereafter illegally reentered the United States. Two encounters with immigration authorities have not been enough to deter the defendant from his illegal conduct.  The defendant asserts that his reason for coming to the United States was initially to be with family and subsequently, on this occasion, to avoid the gang who was attempting to extort money from him. Even if accurate, neither reason supports his illegal entry, particularly when he is currently subject to a lifetime bar from seeking permission to reapply to reenter this country.   It is also noted that the Second Circuit has stated that "8 U.S.C. § 1326 is 'designed to deter deported aliens from illegally reentering for *any* reason,' and that, as a result, the motive of a defendant convicted under that statute perhaps may not be a relevant sentencing factor."  *United States v. Leiva-Deras*, 359 F.3d 183, 191 (2d Cir. 2004) (quoting *Carrasco*, 313 F.3d at 755).

### iii.     The Sentence Should Emphasize Respect for the Law

One of the factors the Court must consider in imposing a sentence is the need for the sentence to reflect the seriousness of the offense and to promote respect for the law.  18 U.S.C. § 3553(a)(2)(A).  The defendant has a long history of disregarding the gravity of his actions and the requirements of the law.  He appears to have no appreciation for the seriousness of his actions, as evinced by his continued illegal entries into the United States, as well as his serious

criminal activity while illegally in the country. . Moreover, defendant Williams blatantly disregarded the requirement of a twenty-year and then a permanent bar from seeking application for reentry to the United States.

In *United States v. Figueroa-Taveras*, the Court of Appeals affirmed the District Court's decision not to grant a downward departure from the Guidelines range. 287 Fed. Appx. 947, 948 (2d Cir. 2008). The Court declined to grant a downward departure because the defendant had spent thirteen months in prison on a separate illegal entry charge. *Id.* The Court found that the defendant's prison time "did not seem to have deterred the defendant from reentry, in other words, from committing the crime." *Id.* Likewise, in the present case, the defendant's actions have shown a continuous disrespect for the law, and his sentence should reflect this contempt of this country's immigration laws. In addition, his illegal reentries continued, despite the fact that he was warned on each occasion of his removal that he could be prosecuted for his illegal reentry.

> iv. A Guideline Range Would Meet the Goals of Just Punishment, Specific, and General Deterrence

A Guidelines sentence is appropriate in the present case "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the law." 18 U.S.C. § 3553(a)(2)(A). If the Court were to grant the defendant's request for a significantly below-Guidelines sentence, it will be a lower sentence than his last reentry sentence. This is not a just punishment for the defendant, as he would not incur incremental consequences for his illegal actions and would not be deterred from further illegal reentry into this country. The defendant does not assert that he will not reenter this country again and given that he has inferred that he will face "extortion" from the gang in Jamaica, it is to be expected that he may seek to return illegally, once again, following his removal. In fact, while the defendant

explained why he reentered, he has said nothing in his letter to the Court regarding whether he intends to attempt yet another illegal reentry in to this country.

Likewise, other illegal aliens will not be deterred from entering the United States if they see there are no incremental and serious consequences to those actions.  The defendant has illegally entered the United States at least three times.  As the Sentencing Commission has said, "General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each reoccurrence."  U.S.S.G. Ch. 4, Part A (introductory cmt.).  The defendant should be sentenced to a term of imprisonment within the Guidelines range, to make the statement that there are consequences for repeated criminal behavior.  To impose a significantly below Guidelines sentence would be as if no sentence was imposed at all.

B.  There is no factual or legal basis for a  downward departure or variance

The defendant argues for the imposition of a sentence below the correctly calculated Sentencing Guideline range of 57-71 months based on a belief that he was subject to the ineffective assistance of counsel with regard to a number of his myriad drug convictions, as they were not grouped together for resolution on a single day.  Defendant's Memorandum at 2. If this were to have occurred, he argues that he would not have as many criminal history points.  *Id.* He additionally asserts that the fact that he was not engaged in drug dealing when he returned to this country should also serve as a basis for a downward departure or variance. It is the Government's position that neither of these arguments support his position for a below Guideline sentence.

As an initial premise, it is noted that one does not garner support for a downward departure or variance based on compliance with the law.  Compliance is expected of all

members of our society and is not relevant in determining whether a departure may be warranted. There is also no factual or legal support for a below-Guidelines variance to a range of 37-46 months from his correctly calculated range of 57-71 months, representing a departure of 34 months from the low end of the range that he purports to be accurate to the high end of the correct range. Defendant's Memo at 6. He focuses on what he believes to be injustices in the resolution of his State convictions whereby if resolved as he argues should be correct, he would not have accumulated as many additional criminal history points. *Id.* However, while the defendant outlines U.S.S.G. § 4A1.2(a)(2) with regard to the calculation of prior sentences, he fails to note whether, in fact, there were intervening arrests with regard to these cases that might support counting them as a single offense. If one reviews the defendant's criminal history in the PSR, it becomes clear that those cases that were not separated by an intervening arrest were, in fact, not assessed additional criminal history points. PSR ¶¶ 40-45. Therefore, he did receive benefit in this regard.

A review of the defendant's criminal history also reveals that five of the convictions that were counted in his 2000 PSR were not counted in this PSR, as they are now too old to be scored. U.S.S.G.§ 4A11.2(E)(3), ¶¶ 45-49 in 3:99CR265(DJS) and 3:99CR154(DJS), PSR ¶¶ 34-39 (this case). These convictions totaled nine criminal history points that were attributed to defendant Williams in his 2000 PSR, resulting in a yet higher criminal history category of V1, based on the determination that he was a career offender. Defendant Williams additionally received a significant downward departure in his 2000 federal case and the sentence was imposed to run concurrently with his pending state narcotics cases.

Defendant Williams has not received a career offender designation in this case and he is in Criminal History Category V, one category lower than the last time he was before the Court

12

in this District. He is now facing a lower Guideline range for a subsequent reentry offense. Yet, he is looking for additional credit. A further reduction is not legally or factually appropriate.

        C.      <u>A Period of Supervision is Appropriate In This Case</u>

The dual purposes of deterrence and punishment of recidivists are particularly relevant in cases such as this where the defendant has returned to the United States during the period where, if not for his deportation, he may have been under the supervision of probation on supervised release. In a typical case, probation and supervised release serves the purposes of reform of the offender and mitigation of the risk of recidivism because the Government monitors the offender on an ongoing basis. In the case of an alien convicted of a serious offense, instead of being subjected to the supervision of probation for the term set by the court, they are typically deported prior to the start of probation or, more typically, supervised release is not imposed at all. This is appropriate because their deportation essentially eliminates the need for the Government to monitor them for signs of recidivism. Once outside the country, they cannot harm others in the United States.

When a deported alien illegally reenters the country, the governmental interest in reducing recidivism returns because the offender, if he re-offends, now may harm others in the United States. However, as the offender reentered illegally he is not monitored by federal probation. Therefore, the Government cannot reduce the risk of recidivism through careful supervision. Illegal reentry is the rare case where a prior act increases the severity of the current offense since the Government has a strong interest in keeping certain types of offenders from reentering the United States. "[F]louting of American immigration laws is a far graver matter where the defendant's prior deportation was for committing a serious crime than where the prior

deportation was for a technical violation of the immigration laws." United States v. Campbell, 967 F.2d 20, 24 (2d. Cir. 1992). It is important for the Court to consider imposition of a period of supervision following any sentence of incarceration imposed in this case, so that the defendant can be monitored should he illegally return and his presence be discovered prior to his arrest on a new immigration charge.

**IV.     Conclusion**

For the reasons outlined above, the Government respectfully requests that the Court impose a sentence within the correctly calculated Sentencing Guideline range of 57 to 71 months' imprisonment. The Government also respectfully requests that the sentence of incarceration be followed by a three-year term of supervised release. As the defendant has repeatedly entered the United States illegally and committed serious criminal offenses while illegally in this country, a significant Guidelines sentence is warranted.

    Respectfully submitted,

    JOHN H. DURHAM
    UNITED STATES ATTORNEY

    /s/ *Deborah R. Slater*

    DEBORAH R. SLATER
    ASSISTANT UNITED STATES ATTORNEY
    Federal Bar No. Ct04786
    450 Main Street, Room 328
    Hartford, CT 06103
    (860) 947-1101

CERTIFICATION OF SERVICE

Pursuant to the Court's designation of this matter as an electronically-filed case, and in accordance with the requirements for certification of service in such cases, the undersigned certified that the foregoing document was filed electronically on this 28th day of February, 2020. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                    */s/ Deborah R. Slater*
                                    DEBORAH R. SLATER
                                    ASSISTANT UNITED STATES ATTORNEY